IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EDWARD MCKEE, | ) Case No. 1:17-cv-02104 |
| | ) |
| Plaintiff, | ) |
| | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) THOMAS M. PARKER |
| | ) |
| DANIEL SCHEMMEL, *et al.*, | ) |
| | ) **MEMORANDUM OPINION** |
| Defendants. | ) **AND ORDER** |
| | ) |

**I.     Introduction and Procedural Background**

Plaintiff, Edward McKee, *pro se,* sued Case Western Reserve University ("CWRU") and CWRU police officers Daniel Schemmel and Arthur Hardee, alleging that Schemmel and Hardee, in their individual and official capacities, knowingly obtained his personal information from a motor vehicle record and used it for an unpermitted purpose, in violation of the Driver's Privacy Protection Act ("DPPA"), 18 U.S.C. § 2724.[1] ECF Doc. 1, Page ID# 4–6. The parties have now filed cross-motions for summary judgment. ECF Docs. 15 and 26.[2] Because McKee

---

[1] McKee's complaint also states that the defendants violated Ohio Admin Code 4501:2-10-06(C) (restricting the use of the Ohio Law Enforcement Automated Data System ("LEADS")) and Ohio Rev. Code 2913.04(C) (establishing that the unauthorized access, use, or dissemination of information gained from LEADS is a fifth degree felony). ECF Doc. 1, Page ID# 5–6. However, in his response to the defendants' motion for summary judgment, McKee disavows any claim that the defendants violated Ohio Admin. Code 4501:2-10-06(C) and Ohio Rev. Code 2913.04(C), and states that "the sole causes of action in the present case are two violations of the DPPA, not state law." ECF Doc. 20, Page ID# 195.

[2] The defendants originally filed their motion on June 20, 2018. ECF Doc. 14 (sealed). On October 12, 2018, the court struck the defendants' motion, because the defendants failed to comply with the Local Rules requiring supporting documents to be filed as separate components of a filing and gave the defendants seven days to re-file their summary judgment motion and exhibits. ECF Doc. 25. On October 17, 2018, the defendants re-filed their summary judgment motion and exhibits in compliance with court's order directing them to comply with the Local Rules. ECF Doc. 26. In the October 17 filing, the defendants redacted McKee's address from Exhibit A and his

has failed to adduce any evidence sufficient to show that Hardee and Schemmel used his personal information for a purpose not permitted under the DPPA, and because the defendants are entitled to judgment as a matter of law, the court will GRANT the defendants' motion for summary judgment and DENY McKee's motion for summary judgment.

McKee's complaint alleged that: (1) Schemmel sent an email impermissibly disclosing his "photograph, social security number, name, address, date of birth, height, and weight, along with the [statement that McKee] 'is extremely combative c/w constitutional right issues and has serious mental issues," to numerous CWRU employees in order "to damage [McKee's] credibility and boost morale of CWRU employees"; and (2) Hardee sent a letter impermissibly disclosing McKee's "address and full name including middle initial and suffix" in order "to intimidate [McKee], by falsely implying that [McKee's] criticism of CWRU police was somehow illegal or that [McKee] was in some sort of trouble with the police, and to prevent CWRU employees from hearing criticism of abuses committed by their employer." *Id.* at 2, 5–6.

The defendants' summary judgment motion contends that McKee has failed to adduce sufficient evidence to support his claims that Schemmel and Hardee used for improper purposes his personal information obtained through the Ohio Law Enforcement Automated Data System ("LEADS"). ECF Doc. 26, Page ID# 227–29. Specifically, they assert that the undisputed record evidence shows that: (1) Schemmel did not obtain McKee's information through LEADS; and (2) Schemmel and Hardee properly used McKee's personal information in conjunction with their duties as CWRU police officers. *Id.* McKee's motion argues that he is entitled to judgment as a matter of law because the undisputed record evidence shows that: (1) Hardee's decision to include his full name and address in a letter that was emailed to him did not facilitate the letter's

---

birthdate and social security number from Exhibit B. *Compare* ECF Doc. 14, Page ID# 76–77 (stricken), *with* ECF Doc. 26, Page ID# 233–34.

purpose, *i.e.* prohibiting him from emailing CWRU employees; and (2) the information included in Schemmel's email did not "facilitate the email's purpose of informing CWRU employees that [McKee] had been ordered not to email CWRU employees." ECF Doc. 15, Page ID# 89–90.

## II.     Undisputed Facts and Rule 56 Evidence

The following facts are undisputed or established by the Rule 56 evidence. McKee is a 2010 CWRU graduate, who continues to live in an apartment near CWRU's campus. ECF Doc. 15, Page ID# 86. In 2012, McKee was involved in an incident involving the University Circle Police Department ("UCPD"), and in 2014 he sued University Circle, Inc., several of its employees, and a local business owner. ECF Docs. 15 and 26, Page ID# 86, 226; *Edward McKee v. University Circle, Inc., et al.*, Case No. CV-14-827925. McKee "sent emails to certain CWRU employees," including the President of CWRU and Hardee, "in an attempt to convince them to influence UCPD's management to respond to his concerns" regarding the incident. ECF Docs. 15 and 26, Page ID# 86, 226. At the same time, McKee "began to engage in criticism of CWRU's police department via email to CWRU employees and others, including local government." ECF Doc. 15, Page ID# 86.

On November 4, 2013, Hardee emailed McKee a November 1, 2013, cease and desist letter stating:

> It has come to my attention you are sending emails to [CWRU] employees that are harassing in nature and are interfering with their university activities and duties. I urge you to cease and desist from sending any further emails to any CWRU employees. If you do not stop, my next course of action will be to make you persona non grata, which will prohibit you from entering onto the CWRU campus.

ECF Doc. 26-1, Page ID# 233; *see also* ECF Docs. 15 and 26, Page ID# 86, 226. Hardee's letter was addressed to "Edward F. McKee, III" and included McKee's full mailing address. ECR Docs. 15 and 26-1, Page ID# 87, 233; *see also* ECF Doc. 14, Page ID# 76 (stricken). The name

3

and address in Hardee's email matched the name and address on McKee's Ohio state ID. ECF Doc. 15-1, Page ID# 92. Hardee received McKee's name and address from Schemmel. ECF Doc. 15-2, Page ID# 95. He included McKee's full name and address on the letter because it was "standard practice" to do so. *Id.* Hardee prepared the November 1, 2013, letter to "advise [McKee] to cease sending harassing emails to CWRU employees and interfering with their university activities and duties." ECF Doc. 15-2, Page ID# 95; *see also* ECF Doc. 26-4, Page ID# 240. In an affidavit, Hardee testified that "[a]ll searches regarding Mr. McKee were conducted for legitimate law enforcement purposes including but not limited to campus safety," and that "[a]ny use of Mr. McKee's personal information was in conjunction with [his] duties as a law enforcement officer of the CWRU Police Department." ECF Doc. 26-4, Page ID# 240.

On November 5, 2013, Schemmel emailed "23 private police officers, 19 security guards, the Director of Parking and Building Security, the Vice President for Campus Services, and one IT employee," stating:

> Former CWRU Student was sent (11-4-13) notice to cease/desist contact with CWRU. No PNG at this time. If seen on campus or in the area, please use caution/discretion. He is extremely combative c/w constitutional right issues and has serious mental issues. Ed McKee . . . 6ft 185lbs.

ECF Doc. 26-2, Page ID# 234; *see also* ECF Doc. 15, Page ID# 87. The email also included McKee's street address with unit number, full date of birth, full social security number. ECF Docs. 15 and 26-2, Page ID# 87, 234; *see also* ECF Doc. 14, Page ID# 77 (stricken). Schemmel attached two of McKee's pictures to the email. ECF Docs. 15 and 26-2, Page ID# 87, 235. One photo matched the photo on McKee's Ohio state ID, and the other personal information in Schemmel's email matched the information that McKee submitted to the Ohio Bureau of Motor Vehicles when he got his Ohio state ID. ECF Docs. 15 and 15-1, Page ID# 87, 92. The employees who received the email fell under the Police and Security umbrella of the CWRU

4

Police Department. ECF Doc. 26-3 and 26-4, Page ID# 237, 240. Schemmel found: (1) one photo in CWRU's student ID records; (2) McKee's address, date of birth, and social security number through the TLOxp[3] service; and (3) McKee's driver's license through the Ohio Law Enforcement Gateway.[4] ECF Docs. 15-3 and 26-3, Page ID# 102, 237.

In his responses to McKee's interrogatories, Schemmel stated that the purpose of his email was to "advise the recipients that a former CWRU student was sent a notice to cease and desist contact with the University . . . [and] to use caution/discretion with [McKee] if encountered on campus." ECF Doc. 15-3, Page ID# 104. He stated that he included McKee's photo, address, date of birth, social security number, height, and weight in the email because it was "standard practice" to do so. *Id.* at 102. In an affidavit, Schemmel testified that his work "as a detective sergeant for the CWRU Police Department include[d] investigating crimes and internal issues relative to the safety and security of campus and the surrounding community." ECF Doc. 26-3, Page ID# 236. He stated that he searched for McKee's information "for legitimate law enforcement purposes including campus safety," and that he transmitted the November 5, 2013, email to (1) advise CWRU employees that McKee was sent a cease and desist letter, and (2) warn CWRU employees under the Police and Security umbrella "to use caution and discretion with Mr. McKee." *Id.* at 237.

---

[3] TLOxp is a data aggregation service that allows subscribers to access information reports containing names, addresses, aliases, emails, phone numbers, places of employment, and other information. *About TLOxp*, TRANSUNION TLOXP, https://www.tlo.com/about-tloxp (last visited Dec. 6, 2018).
[4] The Ohio Law Enforcement Gateway is a web-based database that allows Ohio law enforcement agencies to share criminal justice data. *Ohio Law Enforcement Gateway*, OHIOATTORNEYGENERAL.GOV, https://www.ohioattorneygeneral.gov/Law-Enforcement/Ohio-Law-Enforcement-Gateway (last visited Dec. 6, 2018).

### III. Law & Analysis

#### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Maben v. Thelen*, 887 F.3d 252, 258 (6th Cir. 2018). The moving party must demonstrate the "basis for its motion, and identify[] those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotation omitted). The nonmoving party may not simply rely on his pleadings, but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). A reviewing court must determine whether the evidence that the nonmoving party relies upon "presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52. In evaluating the evidence presented on a summary judgment motion, courts must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 255. Nonetheless, a court need not accept unsupported or conclusory statements as true. *See Alexander v. CareSource*, 576 F.3d 551, 560 (6th Cir. 2009) ("Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment.").

#### B. The DPPA & Police Functions

Under the DPPA, an individual may bring a civil action for actual and punitive damages, as well as preliminary and equitable relief, against "[a] person who knowingly obtains, discloses, or uses [his] personal information, from a motor vehicle record, for a purpose not permitted

6

under [the DPPA]." 18 U.S.C. § 2724(a). Obtaining, disclosing and using personal information from a motor vehicle record is permitted "[f]or use by any government agency, including any court or law enforcement agency, in carrying out its functions, or any private person or entity acting on behalf of a Federal, State, or local agency in carrying out its functions." 18 U.S.C. § 2721(b)(1). "Motor vehicle record" includes identification cards issued by state departments of motor vehicles. 18 U.S.C. § 2725(1). The DPPA was intended to prevent stalkers, harassers, would-be criminals, and other people with nefarious purposes from obtaining and using personal information from motor vehicle records. *See Margan v. Niles*, 250 F. Supp. 2d 63, 68 (N.D.N.Y. 2003) (citing 140 Cong. Rec. H2527 (Apr. 20, 1994) (statement of Rep. Goss) ("The intent of this bill is simple and straightforward: We want to stop stalkers from obtaining the name and address of their prey before another tragedy occurs. . . . The Driver's Privacy Protection Act . . . is a reasonable and practical crime fighting measure.").

Private university police departments and their employees are vested with the same powers and authorities vested in municipal police departments, county sheriffs, and their employees. Ohio Rev. Code § 1713.50(C). Ohio police duties generally include preserving the peace; protecting persons and property; enforcing all ordinances, state laws, and court orders. Ohio Rev. Code §§ 311.07(A), 737.11. In executing their duties, police may communicate with other members of the same department, other law enforcement departments, and other government entities. *Cf.* Ohio Rev. Code §§ 311.07(A) and 737.04 (discussing such cooperation); *see also Parus v. Kroeplin*, 402 F. Supp. 2d 999, 1006 (W.D. Wis. 2005) (finding no violation of the DPPA as a matter of law when a police dispatcher gave motor vehicle information to another law enforcement agent who had requested it). Further, police may communicate identifying information to the public at large if necessary in the execution of their

7

duties to preserve the peace, protect persons and property, and enforce the law. *Cf. McQuirter v. City of Motgomery*, No. 2:07-CV-234-MEF, 2008 U.S. Dist. LEXIS 10319 (M.D. Ala. Feb. 12, 2008) (finding that police officers who shared a photograph from a plaintiff's driver's license with the media and other law enforcement officers were engaged in carrying out a law enforcement function).

### C. McKee's DPPA Claim

The court concludes that even construing the record evidence in the light most favorable to McKee, McKee has failed to adduce evidence sufficient to establish a genuine issue of material fact that the defendants violated the DPPA. Fed. R. Civ. P. 56(a); *Maben*, 887 F.3d at 258; *Anderson*, 477 U.S. at 255. Even assuming that Hardee and Schemmel derived McKee's personal information, including his photo, from motor vehicle records, the undisputed record evidence establishes that they accessed, used, and disseminated that information in the execution of their duties as CWRU Police Officers. 18 U.S.C. §§ 2721(b)(1), 2724(a). Here, Hardee executed his duties in preserving the peace and protecting persons and property when he sent McKee a letter demanding that he cease and desist from harassing CWRU employees. Ohio Rev. Code §§ 311.07(A), 737.11, 1713.50(C). Although the inclusion of McKee's full name and address might not have been necessary to effect delivery of Hardee's cease and desist letter, McKee has adduced no evidence to dispute that the inclusion of a recipient's name and address on a letter is not a standard practice to ensure the recipient's identity. Furthermore, the undisputed record evidence establishes that Schemmel executed his duties in preserving the peace and protecting persons and property, in cooperation with other law enforcement members and safety personnel, when he shared with other personnel of the CWRU Police Department and CWRU Public identifying information regarding McKee and warning the other law enforcement

and safety personnel to be careful in dealing with him. Ohio Rev. Code §§ 311.07(A)–(B), 737.04, 737.11, 1713.50(C); *Parus*, 402 F. Supp. 2d at 1006; *McQuirter*, 2008 U.S. Dist. LEXIS 10319 *5–6. Thus, McKee has failed to adduce evidence sufficient to establish that Hardee and Schemmel used his personal information for a purpose not permitted under the DPPA. 18 U.S.C. § 2721(b)(1), 2724(a). Accordingly, the defendants are entitled to summary judgment as a matter of law. For this same reason, McKee is not entitled to judgment, as a matter of law, on the undisputed record before the court.

## IV. Conclusion

Because McKee has failed to adduce evidence sufficient to show that Hardee and Schemmel used his personal information for a purpose not permitted under the DPPA, and because the defendants are entitled to judgment as a matter of law, the court GRANTS the defendants' motion for summary judgment and DENIES McKee's motion for summary judgment.

IT IS SO ORDERED.

Dated: December 19, 2018

Thomas M. Parker
United States Magistrate Judge